**In re Gerald L. RUSSELL (Debtor).**

**Lillian Slay RUSSELL (Plaintiff),**

v.

**Gerald L. RUSSELL (Defendant).**

**Bankruptcy No. 91BK–80076.**
**Adv. No. 91AP–8092.**

United States Bankruptcy Court,
W.D. Louisiana,
Alexandria Division.

June 16, 1992.

Roy S. Halcomb, Jr., Alexandria, La., for plaintiff, Lillian Slay Russell.

Marion A. French, Alexandria, La., for debtor, Gerald L. Russell.

## REASONS FOR DECISION

HENLEY A. HUNTER, Bankruptcy Judge.

This matter comes before the Court on the complaint of the plaintiff, Lillian Slay Russell, to determine the dischargeability of the obligation of the debtor, Gerald L. Russell, arising from the arrearages allegedly due her arising from a final judgment of a state court awarding her an interest in his military retirement benefits. Plaintiff also seeks additional relief regarding the filing of her claim in the related bankruptcy case and the debtor's allegedly belated amendment of his bankruptcy schedules. This is a Core Proceeding pursuant to 28 U.S.C. Section 157(b)(2). This Court has jurisdiction pursuant to 28 U.S.C. Section 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 22.01 incorporated into Local Bankruptcy Rule 1.2. No party at interest has sought to withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. Pursuant to these Reasons, there will be judgment in favor of the plaintiff against the defendant decreeing the arrearages non-dischargeable under 11 U.S.C. 523(a)(4) and (6). The remainder of the relief sought by the plaintiff is denied.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff and defendant were married on October 5, 1958. They were legally separated by judgment of the Ninth Judicial District Court for Rapides Parish on March 3, 1977. They were later divorced by judgment rendered May 26, 1978 and signed June 1, 1978. A petition to partition the community property was filed in 1983. Exhibit P–1. The sole property sought to be

partitioned was the amounts due from debtor's military retirement.

The partition suit resulted in a judgment that those military retirement benefits constituted the separate property of the defendant. Mrs. Russell appealed to the Court of Appeal for the Third Circuit, State of Louisiana. That Court reversed the decision of the trial court in part; holding that the trial court erred in its holding that the entire amount paid to the defendant constituted disability income, thus being separate property. It remanded the case to the trial court to recalculate the amounts due which were taxable and subject to partition as community property. Exhibit P–2. *Russell v. Russell*, 520 So.2d 435 (La.App. 3 Cir.1987).[1] Writs were denied by the Third Circuit and the United States Supreme Court. Exhibits P–3 and P–4. *Russell v. Russell, writ den.* 520 So.2d 119; *cert. den.* 490 U.S. 1097, 109 S.Ct. 2447, 104 L.Ed.2d 1002 (1989).

The trial court then rendered judgment dated May 13, 1991, in favor of Mrs. Russell in the amount of $14,318.33 and awarding her "... 38.9% of all disposable retired pay, being that part of defendant's retired pay identified as being taxable, received or to be received by defendant after March 31, 1991 as a result of his retirement from the United States Army[.]" Exhibit P–6. Written Reasons were assigned. Exhibit P–5. No further appeals were filed. That award is an ownership interest in the retirement pension. *Eskine v. Eskine*, 518 So.2d 505 (La.1988). *See also, Frazier v. Harper*, 600 So.2d 59 (La.S.Ct. 1992).

Mr. Russell filed a voluntary petition for relief under Chapter 13 on January 14, 1991. A plan was confirmed on February 28, 1991. On September 10, 1991, the case was converted to a case under Chapter 7. Pursuant to the motion to convert, debtor also sought to add the name of Mr. Eugene Cicardo, an Alexandria attorney, as an

unsecured creditor.[2] The order of conversion was entered on September 10, 1991. A 341 meeting of creditors was noticed for October 15, 1991.

On October 15, 1991, Mr. Russell filed a "Modification to Chapter 7" reciting that he "... inadvertently left out an unsecured creditor in his Schedule A–3. The creditor is his ex-wife, Lillian Slay Russell, and he is obligated to her in the amount of fourteen thousand three hundred eighteen and 33/100 ($14,318.33) Dollars plus legal interest of thirteen thousand four hundred fifty-nine and 20/100 ($13,459.20) Dollars for a total obligation of twenty-seven thousand seven hundred seventy-seven and 53/100 ($27,777.53) Dollars." An amended list of unsecured creditors listing Mrs. Russell is attached to this motion.

This complaint was filed on December 5, 1991. Debtor was discharged on February 10, 1992. The Chapter 7 Trustee filed a Report of No Distribution on March 4, 1991. The Chapter 13 Trustee filed a final report on October 16, 1991. No funds were available for transfer from the Chapter 13 trustee to the Chapter 7 trustee.

Mr. and Mrs. Russell testified at the trial of this matter. Mrs. Russell testified that she had received no funds from the debtor's retirement as a result of the state court judgment; Mr. Russell admitted that no funds had been paid. This is true as to both the arrearages due prior to the filing of the bankruptcy petition and the continuing amounts becoming due post-petition. Mr. Russell testified that his intentions with regard to paying any amounts due, or rather his non-payment of same, is and will be governed by the advice of his counsel. He has not responded to requests to assist in an effort by Mrs. Russell to have the military payments sent directly to her. Exhibits P–7(A)–(D); 8(A)(C).

These reasons first address plaintiff's contentions under 11 U.S.C. 523. Under 11

---

1. The trial court had previously rendered a summary judgment in favor of Mr. Russell. That holding was reversed and the matter remanded for trial. *Russell v. Russell*, 465 So.2d 181 (La. App. 3 Cir.1985).

2. Mr. Russell testified that Mr. Cicardo was one of his attorneys in the divorce proceedings. He was seeking to discharge any money owed Mr. Cicardo from whom he had unsuccessfully requested a "bill."

U.S.C. 523(a)(4), debts arising from a defalcation while in a fiduciary capacity, embezzlement or larceny are non-dischargeable. Plaintiff strongly relies on the decision of the Fifth Circuit in *In re Chandler*, 805 F.2d 555 (5th Cir.1986); *cert. den.*, 486 U.S. 1023, 108 S.Ct. 1998, 100 L.Ed.2d 229 (1988). That case holds that "... monthly Army retirement benefits awarded to his wife pursuant to a divorce decree ... may not [be] ... discharge[d] ... as debt because they are the sole property of the debtor's former spouse." 805 F.2d at 556. That case reaches the result under 11 U.S.C. 523(a)(4) and (5).

*Chandler*, however, is distinguishable in that it does not expressly treat pre-bankruptcy arrearages on payments of such benefits. All parties here concede that the debtor is not seeking to discharge his post-petition obligation regarding such payments; irrespective of the fact that it seems clear Mr. Russell has little if any present intention whatsoever of paying any sum owed. The present issue is the sum resulting from the state court judgment in the above amounts.

Debtor strongly relies on *Matter of Story*, 36 B.R. 546 (Bkrtcy.M.D.Fla.1983). That case has been criticized, in part due to the fact that it pre-dates *Chandler*. *In re Tidwell*, 117 B.R. 739 (Bkrtcy.S.D.Fla. 1990).

■ In order to prevail under 11 U.S.C. 523(a)(4), plaintiff must establish that the debt arose from a defalcation while in a fiduciary capacity, embezzlement or larceny. In order to prevail under the first alternative, plaintiff must establish a fiduciary duty in her favor arising independently from the taking itself. "A defalcation is a willful neglect of duty, even if not accompanied by fraud or embezzlement." *Matter of Moreno*, 892 F.2d 417 (5th Cir. 1990). The existence of such a duty is a question of state, not federal law.

Plaintiff strongly relies on *Bush v. Taylor*, 912 F.2d 989 (8th Cir.1990), which held that military retirement benefits due a spouse were non-dischargeable as they were encumbered by a constructive trust. *See also In re Kinder*, 133 B.R. 151 (Bkrtcy.W.D.Mo.1991); *In re Peterson*, 133 B.R. 508 (Bkrtcy.W.D.Mo.1991). The concept of a constructive trust has been described as "anathema to civilian notions of ownership and a precept unsupported by the Louisiana Civil Code." *In re Latham Exploration Co., Inc.*, 83 B.R. 423 (W.D.La.1988). *See also, Schwegmann v. Schwegmann*, 441 So.2d 316 (La.App. 5th Cir.1983), *writ den.* 443 So.2d 1122 (La. 1984), *cert. den.*, 467 U.S. 1206, 104 S.Ct. 2389, 81 L.Ed.2d 347 (1984). *Compare: Boyd v. Martin Exploration Co.*, 56 B.R. 776 (E.D.1986).

■ Embezzlement, however, does not require such a pre-requisite duty. Embezzlement is the "fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." *See In re Belfry*, 862 F.2d 661 (8th Cir.1988), *quoting In re Shultz*, 46 B.R. 880 at 889 (Bankr.D.Nev.1985). *See also In re Phillips*, 882 F.2d 302 (8th Cir.1989). There is no suggestion here that Mr. Russell was not lawfully in possession of the funds. Indeed, the state court judgment acknowledges that the payments are to be received by him. The issue becomes his fraudulent misuse of the funds for his own purposes. This court finds that the defendant did in fact appropriate the property of Mrs. Russell to his own use.

■ Plaintiff further relies on 11 U.S.C. 523(a)(6) which excepts from the discharge debts arising from the "willful and malicious injury ... to another entity or to the property of another." *See Eskine.* An act done intentionally is "willful." An act done without just cause or excuse is "malicious." *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480 at 486 (5th Cir.1986); *See also Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241 at 245 (5th Cir.1983). The malicious element of section 523(a)(6) does not require ill will or specific intent to do harm. *Id.; See also Roy v. Gravel and Burnes*, Civil Action No. 91-1765, W.D.La., April 30, 1992.

■ This Court concludes that these pre-petition arrearages are non-dischargeable

under both 11 U.S.C. 523(a)(4) and (6). This result is fully consistent with *Chandler* and *Bush v. Taylor*, discussed *supra*. In the latter, the Court expressed the view that:

> "We doubt that Congress ever intended that a former wife's judicially decreed sole and separate property interest in a pension payable to her former husband should be subservient to the Bankruptcy Code's goal of giving the debtor a fresh start. *See In re Eichelberger*, 100 B.R. 861, 866 (Bankr.S.D.Tex.1989)."

912 F.2d 989 at 994.

This result is also compatible with the decision of the Supreme Court in *Grogan v. Garner*, 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) in which the Court observed:

> "The statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts-such as child support, alimony, and certain unpaid educational loans and taxes, as well as liabilities for fraud. Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start. We think it unlikely that Congress, in fashioning the standard of proof that governs the applicability of these provisions, would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud. Requiring the creditor to establish by a preponderance of the evidence that his claim is not dischargeable reflects a fair balance between these competing interests."

—— U.S. —— at ——, 111 S.Ct. 654 at 659, 112 L.Ed.2d 755 at 765.

These Reasons now briefly address the further contentions of the plaintiff. Plaintiff avers that she should be allowed to file a secured proof of claim in debtor's bankruptcy case. Counsel for plaintiff acknowledges that notice of the pendency of the bankruptcy case was afforded them on the date of the 341 meeting in the converted case. Plaintiff claims to have been prejudiced by her lack of knowledge and the subsequent "no asset" determination by the Chapter 7 trustee. This argument is less than clear. Plaintiff specifically argued that there was no opportunity to examine debtor at the 341 meeting. At no time did plaintiff avail herself of the remedy afforded for an examination under Rule 2004.

Plaintiff has in fact filed a proof of claim. No objection has been filed to that claim. No deprivation of any right has been shown. Mr. Russell testified that he is a party to a class action suit against the State of Louisiana concerning taxation of his military retirement benefits. Payments are expected to begin in the Fall of 1992. The schedules describe only refunds for 1989 and an anticipated refund for 1990, and make no mention of the class action litigation. Further investigation by the trustee may be warranted.

Plaintiff also has failed to identify any specific item of property to which the state court judgment would have attached.[3] The schedules in the Chapter 13 case indicate that debtor owned a residence in Pineville, LA. The statement of intentions under 11 U.S.C. 521 states that it will be surrendered to Gulfco. The account of the Chapter 13 trustee suggests that surrender occurred.

The objection to the amendment to the schedules listing Mrs. Russell is not properly poised for a decision by this Court. Although Mr. Russell's "inadvertence" in failing to list Mrs. Russell as a creditor seems somewhat incredulous in view of the history of the litigation surrounding these benefits, the right to amend the schedules is extremely broad. *See* Federal Rule of Bankruptcy Procedure 1009. Any objection to such an amendment should be filed in the bankruptcy case.

---

**3.** No party has alleged and, therefore, these reasons do not address the issue of whether the rendition of the state court judgment violated the automatic stay. In the Fifth Circuit, actions taken in violation of the stay are voidable, not void. *Sikes v. Global Marine, Inc.,* 881 F.2d 176 (5th Cir.1989).

## CONCLUSION

For the reasons previously set forth, there will be judgment in favor of the plaintiff and against the defendant decreeing the obligation due the plaintiff, in accordance with the judgment rendered by the Ninth Judicial District Court in Civil Suit No. 129,760, *non-dischargeable*. The additional demands of the plaintiff are *rejected*. A separate, conforming order will enter.